**WEYERHAEUSER COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 13594.

United States Court of Appeals
Seventh Circuit.

Dec. 17, 1962.

Thomas R. McMillen, James B. Moran, Chicago, Ill. (Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., of counsel), for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Attorney, National Labor Relations Board, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Warren M. Davison, Attorney, National Labor Relations Board, for respondent.

Before HASTINGS, Chief Judge, and DUFFY and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This case is before us on petition of Weyerhaeuser Company (petitioner) under § 10(f) of the National Labor Relations Act, as amended[1] to review and set aside an order of the National Labor Relations Board (Board).[2] In its answer, the Board petitioned for enforcement of its order under § 10(e) of the Act.[3]

The Board found that petitioner interfered with and discriminated against its lithographic production employees in violation of § 8(a) (1) and (3)[4] of the Act by reorganizing its printing operations during the pendency of a representation proceeding in an attempt to render inappropriate a unit of such employees sought by Amalgamated Lithographers of America, Local No. 4 (Lithographers), the charging party in this case.

Petitioner is a Washington corporation engaged in the manufacture, sale and distribution of folding boxes. Petitioner's plant at Chicago, Illinois is the only one involved in these proceedings.

The first step in petitioner's manufacturing process is usually the printing of colored pictures and printed matter on flat sheets of box board. Petitioner uses lithographic equipment and letterpress equipment in its printing operations.

On March 7, 1960, Lithographers petitioned for a representation election within a unit comprised of all of petitioner's 16 lithographic production employees. At that time, all lithographic employees were under the immediate supervision of a lithographic foreman in a separate section of the printing department. Prior to this time, some of the lithographic employees had been interchanged with other employees in the plant to prevent layoffs during slack periods.

In April, 1960, hearings were held on Lithographers' representation petition. Petitioner and Printing Specialties & Paper Products Union No. 415, International Printing Pressmen and Assistants' Union of North America, AFL–CIO (Pressmen) intervened, contending that a separate unit of lithographic production employees was inappropriate.

On May 2, 1960, before a decision was reached on Lithographers' petition, Pressmen petitioned for a plant-wide representation election.[5] The case involving Lithographers' petition was then remanded for further hearings and consolidated with the case involving Pressmen's petition. Hearings on these consolidated representation cases were held on May 31 and June 1, 1960.

On June 3, 1960, petitioner met with Lithographers to bargain for the lithographic employees at petitioner's Middlebury, Indiana plant. This meeting was the first between Lithographers and petitioner and was in compliance with an order of this court entered pursuant to our opinion in N. L. R. B. v. Weyerhaeuser Company, 7 Cir., 276 F.2d 865 (1960), cert. denied, 364 U.S. 879, 81 S. Ct. 168, 5 L.Ed.2d 102. In this prior appeal, we affirmed an order of the Board finding the lithographic employees to be an appropriate bargaining unit at the Middlebury plant.

At this meeting, Lithographers presented its demands for the severed unit of Lithographers at the Middlebury plant. Petitioner determined that a contract embodying even a part of the terms requested by Lithographers would make it unprofitable to continue use of the lithographic process not only at its Middlebury plant but at all of its other plants as well.

On June 10, 1960, petitioner changed the organization of its printing department at its Chicago plant so that all

---

1. 29 U.S.C.A. § 160(f).

2. The Board's decision and order are reported at 134 NLRB No. 150.

3. 29 U.S.C.A. § 160(e).

4. 29 U.S.C.A. § 158(a) (1), (3).

5. The exclusion of certain categories of employees from Pressmen's petition is irrelevant to the instant case.

employees in that department would be trained to operate both lithographic and letterpress equipment. These employees were then to be used interchangeably on both types of equipment. At the time petitioner initiated its cross-training program, a decision had not been reached by the Board on whether or not petitioner's lithographic employees constituted an appropriate unit in the Chicago plant.

On June 17, 1960, petitioner filed a motion in the representation proceedings to remand for further hearings. This motion alleged that the changes initiated on June 10, 1960 created "a unit of employees who utilize both lithographic and letterpress operations and equipment interchangeably. The interchange is substantial, within the doctrine of Pacific Press, 66 NLRB 458. The unit sought by Petitioner Amalgamated Lithographers of America is not appropriate in such circumstances."

In support of its motion in the representation cases, petitioner attached the affidavit of its manager of labor relations, James A. Brooks. A portion of this affidavit reads as follows: "The purpose of this change is to avoid the necessity of abandoning lithographic printing due to the uneconomical and uncompetitive working conditions which have been and will be demanded by the Amalgamated Lithographers of America when lithographic production workers are separated from all other production and maintenance workers at this plant."

Petitioner admits that the purpose of its reorganization plan was to forestall possible severance of a unit claimed by Lithographers. Further, all parties agree that by use of this plan whatever distinction there may have been between the skills and duties of lithographic and letterpress employees is being erased.

The evidence introduced by the General Counsel in support of the complaint consisted of a stipulation outlining the events in the two representation cases, the motion of petitioner to remand the representation cases in the light of the reorganization plan and the affidavit of Brooks in support of petitioner's motion.

The trial examiner concluded: "[T]here is no evidence that any employee has been interfered with, restrained, or coerced in his right to join or not to join any labor organization, or to select as his bargaining agent any labor organization, or that individually or collectively employees have been discriminated against in fact or for the purpose of discouraging or encouraging membership in any labor organization." Accordingly, it was the trial examiner's recommendation that the complaint against petitioner be dismissed.

The Board, however, decided that "[B]y organizing its printing department in such manner as to remove the basis for finding a unit of lithographic production employees appropriate, Respondent [petitioner] sought to frustrate the desires of the lithographic employees to organize and to select Lithographers as their bargaining representative. Such conduct is, we [the Board] find, clearly in violation of the rights guaranteed employees in Section 7 of the Act. We further find that such conduct tended to unlawfully discourage membership in Lithographers." The Board ordered petitioner to cease and desist from retraining and interchanging its lithographic employees.[6]

The only issue here is whether the Board properly found, on the evidence before it, that petitioner violated § 8(a) (1) and (3) [7] of the Act by instituting a

---

6. At the time of its decision in the instant case, the Board also issued its decision in the consolidated representation cases. It found that each of the units—lithographic employees and plant-wide—may be appropriate. Petitioner's motion to remand in view of its reorganization was denied.

7. Sections 8(a) (1) and (3) provide in pertinent part:
   "(a) It shall be an unfair labor pratice for an employer—
   "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of this Act;
   \* \* \* \* \*

program of training and interchange among its printing department employees in order to render inappropriate a bargaining unit of lithographic employees.

We find ourselves in agreement with the trial examiner. The Board has failed to sustain its burden of proof that petitioner's reorganization plan is violative of the Act.

So far as the record before us shows, the employees knew nothing more than that they were being trained to operate both types of printing equipment. If this worked a subtle influence on the employees, the record fails to show that this occurred. There was no testimony by employees or anyone else concerning what effect, if any, the reorganization plan had on the lithographic employees.

The Board found that petitioner sought to frustrate the "desires" of its lithographic employees. The record, however, is barren on the subject of what the "desires" of the employees were. There is no evidence that any employee gave up membership in Lithographers or refused to join Lithographers as a result of petitioner's conduct.

There is no evidence in the record that petitioner's conduct was motivated by anti-union animus or that petitioner's conduct interfered with or discriminated against any employees who may have wished to become members of Lithographers. In short, there is no reasonable connection between petitioner's conduct and the employees' rights.

The Board here would have us hold that petitioner committed a *per se* violation of § 8(a) (1) and (3) of the Act by reorganizing its printing operations during the pendency of a representation proceeding in an attempt to render a unit of its employees inappropriate for bargaining. The Board has cited no case to us which has so held, and we have found none. We decline to hold that petitioner's conduct is a *per se* violation of the Act.

It is within the Board's province as a fact-finding body to draw reasonable inferences based upon the facts proved. Radio Officers v. Labor Board, 347 U.S. 17, 48–52, 74 S.Ct. 323, 98 L.Ed. 455 (1954). But where the inferences drawn by the Board are not reasonable, and such inferences are necessary to a finding that the Act has been violated, there has been a failure to prove a violation of the Act.

We hold that in the case before us the inferences drawn by the Board are unreasonable and that the Board has failed to sustain its burden of proof that petitioner violated § 8(a) (1) and (3) of the Act.

In view of our holding that the Board failed to sustain its burden of proof, it is unnecessary for us to pass upon petitioner's argument that its conduct was motivated by permissible economic motives and thus not violative of § 8(a) (1) and (3). See Jays Foods, Inc. v. N. L. R. B., 7 Cir., 292 F.2d 317 (1961); N. L. R. B. v. Lassing, 6 Cir., 284 F.2d 781 (1960), cert. denied, 366 U.S. 909, 81 S.Ct. 1085, 6 L.Ed.2d 235; National Labor Rel. Bd. v. Houston Chronicle Pub. Co., 5 Cir., 211 F.2d 848 (1954).

For the foregoing reasons, the petition to review and set aside the order of the Board against petitioner is granted, and the answering petition of the Board for enforcement is denied.

Order set aside. Enforcement denied.

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."
Section 7 provides in pertinent part:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid, or protection * * *."